IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GROUPE SEB USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> EURO-PRO OPERATING LLC, <br><br> Defendant. | Case No. 2:14-cv-00137-CRE |

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

Dated: January 30, 2014  BUCHANAN INGERSOLL & ROONEY PC

/s/ Gretchen L. Jankowski
Gretchen L. Jankowski
Pa. I.D. No. 74540
Lynn J. Alstadt
Pa. I.D. No. 23487
Mackenzie A. Baird
Pa. I.D. No. 205687

One Oxford Center
301 Grant Street, 20th Floor
Pittsburgh, PA 15219-1410
412 562 8800 (t)
412 562 1041 (f)
gretchen.jankowski@bipc.com
lynn.alstadt@bipc.com
mackenzie.baird@bipc.com

*Counsel for Plaintiff,*
*Groupe SEB USA, Inc.*

**TABLE OF CONTENTS**

I. FACTS ............................................................................................................................. 2

    A. The Parties ........................................................................................................... 2

    B. Euro-Pro's 2011 Advertising Claims ................................................................... 2

    C. Euro Pro's New False Advertising Campaign ..................................................... 3

        1. The Shark Ultimate Professional ............................................................. 3

        2. The Shark Professional ............................................................................ 4

    D. Euro-Pro's Claims of Superiority to Rowenta are Untrue ................................... 4

    E. Euro-Pro's False Claims Currently Appear in Retail Stores, Including Stores within the Western District of Pennsylvania. ............................................ 5

II. ARGUMENT .................................................................................................................... 6

    A. SEB is Entitled to a Preliminary Injunction to Stop Euro-Pro's False Advertising and Unfair Competition. .................................................................... 6

    B. SEB is Likely to Succeed on Its False Advertising and Unfair Competition Claims. .................................................................................................................. 6

        1. Euro-Pro's Claim is Unambiguous and Literally False. ........................... 7

        2. Euro-Pro's False Claim Is Material. ......................................................... 9

        3. The Shark Irons Travel in Interstate Commerce. ..................................... 9

        4. It is Likely that SEB will Suffer Loss of Good Will ............................. 10

    C. Euro-Pro's Actions Are Causing and Will Continue to Cause Irreparable Harm. .................................................................................................................. 10

    D. The Injury to SEB Outweighs Any Alleged Harm Euro-Pro Might Suffer ....... 12

    E. The Public Interest Is Best Served By The Issuance Of An Injunction ............. 13

III. CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.,* 627 F. Supp. 2d 384 (D.N.J. 2009) .................................................................................................................... 11

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Avenue,* 284 F.3d 302 (1st Cir. 2002) ...................................................................................................................... 9

*Castrol, Inc. v. Pennzoil Co.,* 987 F.2d 939 (3d Cir. 1993) ....................................... 7, 8

*Dentsply Int'l, Inc. v. Great White, Inc.,* 132 F. Supp. 2d 310 (M.D. Pa. 2000) ...................... 9, 13

*Euro-Pro Operating LLC v. TTI Floor Care N. Am.,* 1:12-cv-10568, 2012 WL 2865793 (D. Mass. July 11, 2012) ........................................................................... 12

*Highmark, Inc. v. UPMC Health Plan, Inc.,* 276 F.3d 160 (3d Cir. 2001) .................................... 7

*McNeilab, Inc. v. Am. Home Prods. Corp.,* 848 F.2d 34 (2d Cir. 1988) ................................ 10, 11

*Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharms. Co.,* 290 F.3d 578 (3d. Cir. 2002) ...................................................................... *passim*

*Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharms. Co.,* 129 F. Supp. 2d 351 (D.N.J. 2000), *aff'd*, 290 F.3d 578 (3d. Cir. 2002) ................. *passim*

*Osmose, Inv. v. Viance, LLC,* 612 F.3d 1298 (11th Cir. 2010) ........................................ 9

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.,* 653 F.3d 241 (3d Cir. 2011) .......................... 7

*Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.,* 292 F. Supp. 2d 594 (D.N.J. 2003) ................................................................................. 8, 10, 12, 13

*R.J. Ants, Inc. v. Marinelli Enterprises, LLC,* 771 F. Supp. 2d, 475 (E.D. Pa. 2011) ..................................................................................................................... 7

*S.C. Johnson & Son, Inc. v. Clorox Co.,* 241 F.3d 232 (2d Cir. 2001) ......................................... 9

*W.L. Gore & Assoc., Inc. v. Totes Inc.,* 788 F. Supp. 800 (D. Del. 1992) ............................ *passim*

*Warner–Lambert v. Breathasure,* 204 F.3d 87 (3d Cir. 2000) ..................................................... 7

**Statutes**

15 U.S.C. § 1125(a) ............................................................................................... 6, 14

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GROUPE SEB USA, INC.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>EURO-PRO OPERATING LLC,<br><br>　　　　　Defendant. | Case No. 2:14-cv-00137-CRE |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

　　　　Rowenta household steam irons are the #1 selling steam irons in the United States and are known especially for their superior steam output. In late 2013, Defendant Euro-Pro Operating LLC ("Euro-Pro") began to disseminate false advertisements that claim its line of Shark-brand steam irons offer "MORE POWERFUL STEAM vs. Rowenta at half the price". This literally false comparison claim appears on the boxes in which the Shark irons are sold and on in-store displays provided to retailers. Euro-Pro's dissemination of these false claims deceives the consuming public into the false belief that the much lower-priced Shark steam irons offer the same high-quality performance of the Rowenta irons, thereby causing substantial and irreparable harm to Plaintiff Groupe SEB USA, Inc. ("SEB"). For these reasons, SEB now seeks to preliminarily enjoin Euro-Pro from engaging in this false advertising and unfair competition pursuant to Rule 65 of the Federal Rules of Civil Procedure, and respectfully submits this memorandum of law in support of its preliminary injunction motion.

I. **FACTS**

A. **The Parties**

SEB distributes and sells various branded small household appliances, including cookware, kitchen electrics, and domestic care products throughout the United States. Among the many products sold by SEB in the United States is the Rowenta line of household steam irons. *See* Complaint (Dkt. No. 1) ¶ 2. Rowenta irons are the #1 selling steam irons in the United States (measured by dollar value of sales), known especially for their superior steam output. *Id*.

One of Rowenta's competitors is a line of steam irons sold by Euro-Pro under the brand name Shark. The Shark line of household steam irons consists of three types: the Ultimate Professional Iron, the Professional Iron, and the Lightweight Professional Iron. *Id*. ¶ 3. Both the Rowenta steam irons and Shark steam irons are sold in this judicial district, and certain retail stores display both brands side by side. *See* January 28, 2014 Affidavit of Steven R. DeWick, contemporaneously filed herewith, ("DeWick Affidavit") ¶¶ 8, 15, 16.

B. **Euro-Pro's 2011 Advertising Claims**

In 2011, Euro-Pro claimed that Shark steam irons sold as model numbers GI568-10, GI435-11, and GI468N were the "#1 most powerful iron" and were superior to competing irons in various respects. Compl. ¶ 17. When SEB learned of this claim, it tested these three Shark models and compared them to several Rowenta steam irons, including the Rowenta DW9080. *Id*. ¶ 18. Those tests demonstrated that the Shark steam irons did not have greater steam power than the Rowenta DW9080. *Id*. SEB provided Euro-Pro with a report of its tests in February 2011. *Id*. ¶ 19. Thus, since February 2011, Euro-Pro has had in its possession tests conducted by SEB that demonstrate the steam output of the Rowenta DW9080 is more powerful than the steam output of the Shark professional steam iron line. *Id*.

SEB has not seen the Shark steam iron models that it complained about in 2011 currently for sale in this judicial district. *Id*. ¶ 20. Euro-Pro, however, has not ceased comparing the performance of Shark steam irons to the performance of Rowenta steam irons. *Id*.

### C. Euro Pro's New False Advertising Campaign

In late 2013, SEB learned that Euro-Pro is now selling two new models of Shark steam irons: the Shark Ultimate Professional, Model No. GI505-55[1] (the "Shark Ultimate Professional") and the Shark Professional, Model No. GI405-55 (the "Shark Professional"). *Id*. ¶ 21. Euro-Pro explicitly compares the Shark Ultimate Professional and the Shark Professional to Rowenta, and claims that these irons outperform the Rowenta steam irons bearing Model Nos. DW9080 and DW5080 in various respects.

#### 1. The Shark Ultimate Professional

Euro-Pro sells the Shark Ultimate Professional in a box that falsely claims in the lower right corner: "MORE POWERFUL STEAM vs. Rowenta®† at half the price." *See* Compl. ¶ 22. Directly above this statement, in the upper right corner, Euro-Pro claims: "#1 MOST POWERFUL STEAM." *Id*. On the bottom of the box, in fine print, Euro-Pro states that the direct comparison to Rowenta is "†based on independent comparative steam burst testing to Rowenta DW9080 (grams/shot)." *Id*. Euro-Pro also buries the following explanation for the "#1 MOST POWERFUL" claim in fine print on the bottom of the box: "offers more grams per minute (extended steam burst mode before water spots appear) when compared to leading competition in the same price range, at time of printing." *Id*.

---

[1] The Shark Ultimate Professional sold at Walmart stores bears model number GI505WM-55. There is no material difference between the GI505WM-55 and the GI505-55, which is available through other retailers.

3

### 2. The Shark Professional

Euro-Pro sells the Shark Professional in a box that falsely claims in the lower right corner: "MORE POWERFUL STEAM vs. Rowenta®†† at half the price." *See* Compl. ¶ 24. Directly above this statement, in the upper right corner, Euro-Pro claims: "#1 MOST POWERFUL STEAM." *Id*. On the bottom of the box, in fine print, Euro-Pro states that the direct comparison to Rowenta is "††based on independent comparative steam burst testing to Rowenta DW5080 (grams/shot)." *Id*. Euro-Pro also buries the following explanation for the "#1 MOST POWERFUL" in fine print on the bottom of the box: "offers more grams per minute (maximum steam setting while bursting before water spots appear) when compared to leading competition in the same price range, at time of printing." *Id*. Euro-Pro has also published these false statements on hang tags placed on in-store displays of the Shark Professional. *See* Compl. ¶ 26 and DeWick Affidavit ¶ 9(h).

### D. Euro-Pro's Claims of Superiority to Rowenta are Untrue

In December 2013, SEB received a report from an outside laboratory, which SEB had retained to conduct tests on the Shark Ultimate Professional, Shark Professional, Rowenta DW9080 and Rowenta DW5080 pursuant to protocols established by the International Electrotechnical Commission[2] ("IEC") as well as Euro-Pro's own instruction for use. Compl. ¶ 27. These tests measured (1) the variable steam rate (in grams per minute) according to IEC60311 protocol, (2) the mass of shot of steam of each iron (in grams per shot) according

---

[2] The IEC is a non-profit, non-governmental international standards organization that prepares and publishes International Standards for all electrical, electronic and related technologies, collectively known as "electrotechnology". The IEC is the world's leading international organization in its field, and its standards are adopted as national standards by its members. Compl. ¶ 28.

IEC60311 protocol, and (3) the mass of shot of steam of each iron (in grams per shot) according to the instructions for use provided with the Shark Ultimate Professional.  *Id*. ¶ 29.

For each test, the Rowenta DW9080 performed better than the Shark Ultimate Professional and the Rowenta DW5080 performed better than the Shark Professional.  *Id*. ¶ 30.  Thus, these tests confirmed what SEB suspected: the Rowenta steam irons have greater steam power than the Euro-Pro Shark steam irons, thereby establishing that Euro-Pro's advertising about the comparative performance of the Shark steam iron are literally false.  *Id*. ¶ 31.

      **E.**    **Euro-Pro's False Claims Currently Appear in Retail Stores, Including Stores within the Western District of Pennsylvania.**

Between January 8 and January 26, 2014, Steven R. DeWick, an employee of Buchanan Ingersoll & Rooney PC, visited numerous retail stores in this judicial district to determine if Euro-Pro's false advertising claims appeared on the boxes of Shark Ultimate Professional and Shark Professional irons currently available for purchase.  *See* DeWick Affidavit.

Mr. DeWick observed the Shark Ultimate Professional in the Walmart in Robinson Township, the Target in Richland Township, and the Best Buy in Robinson Township.  *Id*. ¶¶ 6, 19, and 20.  The Shark Ultimate Professional boxes at each location contained the false claim "MORE POWERFUL STEAM vs. Rowenta®† at half the price."

Mr. DeWick observed the Shark Professional in Kohl's stores in Robinson Township and Ross Township, and Target stores in Ross Township and Richland Township.  *Id*. ¶¶ 8, 15, 16, and 18.  The Shark Professional boxes at each location contained the false claims "MORE POWERFUL STEAM vs. Rowenta®†† at half the price."  Further, in each store the Shark Professional was displayed in close proximity to various models of Rowenta steam irons.  *Id*. ¶¶ 9(h), 15, 16.  In fact, the Kohl's in Robinson Township displayed the Rowenta DW9080 and

the Rowenta DW5080 next to the Shark Professional and the Shark Lightweight Professional, Model No. GI305-55.  *Id.* ¶ 9(h) and Exhibit B8.

## II. ARGUMENT

### A. SEB is Entitled to a Preliminary Injunction to Stop Euro-Pro's False Advertising and Unfair Competition.

In the Third Circuit, a preliminary injunction will issue when (1) the movant has shown a likelihood that it will succeed on the merits; (2) the movant would be irreparably harmed without injunctive relief; (3) the potential harm to the movant outweighs the harm the defendant may suffer should an injunction issue; and (4) granting preliminary relief would be in the public interest.  *See generally*, *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d. Cir. 2002).  SEB readily satisfies the preliminary injunctive relief requirements because Euro-Pro's literally false claims concern an explicit comparison between the Shark and the Rowena lines of steam irons.  Euro-Pro's false claims harm the Rowenta brand, thus causing substantial harm that will continue in the absence of injunctive relief.  Finally, the public has a right not to be deceived or confused, and Euro-Pro's false claims trick consumers into thinking that they are buying a less expensive equivalent of a Rowenta-brand iron.  SEB is therefore entitled to injunctive relief to halt Euro-Pro's wrongful conduct.

### B. SEB is Likely to Succeed on Its False Advertising and Unfair Competition Claims.

Counts I and II of the Complaint assert unfair competition claims under both the Lanham Act and common law.  Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), forbids the use in commerce of any "false or misleading representation of fact which . . . misrepresents the nature, characteristics, [or] qualities . . . of another person's goods, services, or commercial activities."

To establish a false advertising claim under the Lanham Act, a plaintiff must prove: "1) that the defendant has made false or misleading statements as to his own product [or another's];

2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011) (quoting *Warner–Lambert v. Breathasure*, 204 F.3d 87, 91-92 (3d Cir. 2000)). "A Pennsylvania common law cause for unfair competition is identical to the Lanham Act, without the federal requirement of interstate commerce." *R.J. Ants, Inc. v. Marinelli Enterprises, LLC*, 771 F. Supp. 2d, 475, 489 (E.D. Pa. 2011) (citations omitted). "[O]n an application for preliminary injunction, the plaintiff need only prove a prima facie case, not a certainty that he or she will win." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001) (citation omitted).

### 1. Euro-Pro's Claim is Unambiguous and Literally False.

There are two different theories of recovery for false advertising under Section 43(a): "(1) an advertisement may be false on its face; or (2) the advertisement may be literally true, but given the merchandising context, it nevertheless is likely to mislead and confuse consumers." *Castrol, Inc. v. Pennzoil Co*., 987 F.2d 939, 943 (3d Cir. 1993).

The test for literally false advertisements is quite simple: "[I]f a defendant's claim is untrue, it must be deemed literally false." *Id.* at 943-44. The literally false claim "may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Novartis*, 290 F.3d at 587–88. If a plaintiff proves that a defendant's claim is literally false, a court may grant the relief requested without proof of the advertisement's impact on the buying public. *Id.* at 586. For this reason, the second element of a Lanham Act claim, actual deception

or a tendency to deceive, is presumed if a plaintiff proves that an advertisement is unambiguous and literally false.  *Id.* at 587.

There is nothing ambiguous about the statement "MORE POWERFUL STEAM vs. Rowenta at half the price."  This claim is a deliberate mischaracterization of the comparative qualities of the Shark steam irons and the Rowenta irons.  *See, e.g., Castrol, Inc.*, 987 F.2d at 944 (finding statement "outperforms any leading motor oil against viscosity breakdown" was literally false claim of superiority); *Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, 292 F. Supp. 2d 594, 606-07 (D.N.J. 2003) (enjoining use of unambiguous false claim "more doctors prefer the patch that gives you the choice"); *W.L. Gore & Assoc., Inc. v. Totes Inc.*, 788 F. Supp. 800, 807 (D. Del. 1992) (enjoining use of comparative claim that was "not a general claim of superiority or mere puffery, it is a claim juxtaposed with a comparison to GORE–TEX").

Euro-Pro's comparative claim "based on independent comparative steam burst testing" to the Rowenta DW9080 and DW5080, is demonstrably false.  SEB retained an outside laboratory to conduct tests on the Shark Ultimate Professional, Shark Professional, Rowenta DW9080 and Rowenta DW5080.  Compl. ¶ 27.  Those tests measured the variable steam rate and mass of shot of steam of each iron in accordance with the leading industry protocols.  *Id*. ¶ 29.  The independent tests also measured the mass of shot of steam of each iron according to the instructions for use provided with the Shark Ultimate Professional.  *Id*.  In each of these tests, the Rowenta DW9080 performed better than the Shark Ultimate Professional, and the Rowenta DW5080 performed better than the Shark Professional.  *Id*. ¶ 30.  As such, Euro-Pro has made a claim of superiority that, when tested, proves to be false.  Euro-Pro should be enjoined from continuing to make this claim.  *See Castrol*, 987 F.2d at 944.  Because Euro-Pro's advertising is

literally false, SEB is not required to present evidence of consumer deception in order for an injunction to issue.  *Novartis*, 290 F.3d at 587.

        **2.**       **Euro-Pro's False Claim Is Material.**

The Lanham Act also requires a false advertising claim to be material.  The materiality inquiry focuses on whether the defendant's claims are likely to influence consumers' purchasing decisions.  *See, e.g., Dentsply Int'l, Inc. v. Great White, Inc.*, 132 F. Supp. 2d 310, 325 (M.D. Pa. 2000) (finding claim that product offers a useful feature that its competitor does not would influence purchasing decisions).  A plaintiff may demonstrate materiality by showing that the defendant "misrepresented an inherent quality or characteristic of the product."  *Osmose, Inv. v. Viance, LLC*, 612 F.3d 1298, 1319 (11th Cir. 2010); *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Avenue*, 284 F.3d 302, 311-12 (1st Cir. 2002); *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232 (2d Cir. 2001).

Steam output is one of the most important criterion when buying a steam iron.  Compl. ¶ 16.  Steam output is unquestionably an "inherent characteristic" of a steam iron.  Euro-Pro's claims, which boast superior steam output "at half the price" as compared to Rowenta, are therefore material.  Further, consumers seeking to buy a steam iron often compare irons sold in the same or similar stores by reading the information on the packages of the irons and/or on in-store displays before deciding which iron to purchase.  Compl. ¶ 16.  Thus, the fact that Euro-Pro's claims are made on boxes and displays at the point of sale undoubtedly influence consumer's purchasing decisions.

        **3.**       **The Shark Irons Travel in Interstate Commerce.**

The Shark Professional and Ultimate Professional irons at issue in this case are manufactured in China, and they are sold nationwide by Euro-Pro through retail stores such as Best Buy, Target, Walmart, and Kohl's.  The irons are also available for purchase throughout the

United States through on-line retailers.  Thus, the interstate commerce requirement is easily satisfied.

### 4. It is Likely that SEB will Suffer Loss of Good Will.

There is a reasonable basis to believe that a plaintiff is likely to be damaged where defendant's product "is advertised as having the same technological characteristics, at a much lower price, when it is likely that the product does not possess such characteristics and the advertisements go further to claim that the [defendant's] product is superior to [plaintiff's product]." *W.L. Gore & Assoc., Inc.*, 788 F. Supp. at 810.  Euro-Pro's false statements of superior steam power on the Shark Ultimate Professional and the Shark Professional boxes and hangtags easily satisfy this test.  These statements are likely to cause prospective purchasers to believe that the much lower-priced Shark steam irons offer the same high-quality performance of the Rowenta steam irons, thus disparaging SEB's product and tarnishing its reputation.  *Id*. at 811; *McNeilab, Inc. v. Am. Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988) ("A misleading comparison to a specific competing product necessarily diminishes that product's value in the minds of the consumer.").  These false statements are also likely to cause prospective purchasers to choose to buy a Shark steam iron rather than a Rowenta steam iron.  *See W.L. Gore & Assoc., Inc.*, 788 F. Supp. at 811.  ("Repeated claims of competitive superiority made to the same market of consumers will eventually lead to lost sales and deprive Gore of a legitimate competitive advantage.").  Thus, SEB will be able to demonstrate a likelihood of injury.

### C. Euro-Pro's Actions Are Causing and Will Continue to Cause Irreparable Harm.

A plaintiff establishes irreparable harm if it "demonstrate[s] a significant risk that it will experience harm that cannot adequately be compensated after the fact by monetary damages." *Pharmacia Corp.*, 292 F. Supp. 2d at 608 (quotation omitted).  To prove irreparable injury under

§ 43(a), SEB need only provide "a reasonable basis for the belief that ... [it] is likely to be damaged as a result of the false advertising." *W.L. Gore & Assoc., Inc.,* , 788 F. Supp. at 810. While it is well established that loss of market share constitutes irreparable harm, s*ee Novartis*, 290 F.3d at 596, "[i]rreparable injury does not require diversion of actual sales and it can include the loss of control of reputation, loss of trade, and loss of goodwill." *W.L. Gore & Assoc., Inc.*, 788 F. Supp. at 810.

Here, SEB can establish a significant risk of irreparable harm because Euro-Pro's false claims are likely to cause prospective purchasers to believe that the much lower-priced Shark steam irons offer the same high-quality performance of the Rowenta irons, which is not true. *See, e.g., W.L. Gore & Assoc., Inc.*, 788 F. Supp. at 811 ("[T]his Court is convinced that a misleading comparison to a specific competing product necessarily diminishes the product value in the minds of the consumer").  Euro-Pro's claim that the Shark Ultimate Professional and Professional irons offer "MORE POWERFUL STEAM vs. Rowenta at half the price" expressly references "Rowenta" thus, clearly causing a loss of control of the Rowenta brand reputation and goodwill.  As a result of Euro-Pro's false statements, SEB has been substantially and irreparably harmed and will continue to be substantially and irreparably harmed in the loss of its customer and brand goodwill.

Additionally, a number of district courts within this Circuit have held that "[w]here the challenged advertising makes a misleading comparison or reference to a competitor's product, irreparable harm is presumed." *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharms. Co.*, 129 F. Supp. 2d 351, 367 (D.N.J. 2000), *aff'd*, 290 F.3d 578 (3d. Cir. 2002) (*citing McNeilab, Inc. v. Am. Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988)); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384 (D.N.J. 2009) (applying

presumption in granting permanent injunction); *see also Pharmacia Corp.*, 292 F. Supp. 2d at 608 (collecting cases); 5 McCarthy on Trademark & Unfair Competition § 27:37 (4th ed. 2012) ("Where the challenged advertising makes a misleading comparison to a competitor's product, irreparable harm is presumed.").[3]

A number of Courts of Appeals have also recognized this presumption and, in fact, even Euro-Pro has recognized that this presumption is valid in prosecuting its own Lanham Act claims. *See* Memorandum in Support of Plaintiff's Motion for Preliminary Injunction (Dkt. 8) at 18, *Euro-Pro Operating LLC v. TTI Floor Care N. Am.*, 1:12-cv-10568, 2012 WL 2865793 (D. Mass. July 11, 2012) ("Because Hoover is engaging in false advertising through direct comparative claims, irreparable harm is presumed upon a showing of likelihood of success on the merits.") (citations omitted).  However, as noted above, SEB can establish a significant risk of irreparable harm and this Court need not apply the presumption recognized in these cases in order to grant SEB injunctive relief.

### D. The Injury to SEB Outweighs Any Alleged Harm Euro-Pro Might Suffer.

Were this Court to issue an injunction, Euro-Pro would still be able to continue to operate its business, which focuses on the sale of numerous types of household goods including vacuums, steam mops, kitchen appliances, and garment care products.  In fact, Euro-Pro would still be able to sell the Shark Ultimate Professional and Shark Professional irons at issue.

SEB merely seeks to enjoin Euro-Pro from selling the Shark Ultimate Professional and Shark Professional in packaging and using in-store displays that contain literally false

---

[3] The Court of Appeals for the Third Circuit has not yet expressly adopted this presumption. However, currently pending before the court is *Ferring Pharmaceuticals Inc. v. Watson Pharmaceuticals*, Case No. 13-2290, in which the court will have the opportunity to adopt the presumption of irreparable harm.  Oral argument is scheduled for February 12, 2014.

statements.  Euro-Pro is not entitled to claim "any legal entitlement to any economic benefits resulting from such false advertising."  *Novartis*, 129 F. Supp. 2d at 369, *aff'd,* 290 F.3d at 596; *see also Dentsply Int'l, Inc.*, 132 F. Supp. 2d at 326 ("Although Defendant may suffer decreased sales if it is precluded from false advertising, that hardship will not be undue.").  Thus, the substantial harm being suffered by SEB as outlined above – including a loss of goodwill associated with the Rowenta brand – far outweighs any possible harm that would result if Euro-Pro were required to comply with the law.

Moreover, to the extent Euro-Pro is harmed by an injunction, that injury was caused by Euro-Pro's own misconduct in making a false claim and may be discounted by the Court.  *See Pharmacia Corp.*, 292 F. Supp. 2d at 609 (citing *Novartis*, 290 F.3d at 596).  In 2011, SEB provided test results to Euro-Pro that demonstrate the steam output of the Rowenta DW9080 is more powerful than the steam output of the Shark professional steam iron line.  Compl. ¶ 19.  Thus, since 2011, Euro-Pro has had in its possession tests conducted by SEB that demonstrate the steam output of the Rowenta DW9080 is more powerful than the steam output of the Shark professional steam iron line.  *Id*.  Any financial loss caused by the injunction, is "self-imposed" and cannot possibly outweigh the possible harm to SEB that would result if Euro-Pro were permitted to continue its false advertisings claims.  *Novartis*, 129 F. Supp. 2d at 369, *aff'd,* 290 F.3d at 596; *see also W.L. Gore & Assoc., Inc.*, 788 F. Supp. at 810 (concluding false advertisements were "carelessly or irresponsibly made and that any 'prejudice' which accrues can be considered to be self-inflicted").

    E.  **The Public Interest Is Best Served By The Issuance Of An Injunction.**

Section 43(a) of the Lanham Act was promulgated to protect consumers from false and deceptive advertising. 15 U.S.C. § 1125(a).  As recognized by the court in *W.L. Gore &*

*Associates, Inc. v. Totes Inc.,* the public has a right not to be deceived or confused, and a defendant should be enjoined from making advertising claims that have a tendency to deceive:

> The public has a right to information that will allow them to assess the quality of a product and to accurately price the product in accordance with their priorities and desires. False advertising deprives the consumer of this information and deceives them into thinking that they are buying a less expensive equivalent, a bargain on a quality product.

*W.L. Gore & Assoc., Inc.*, 788 F. Supp. at 813 (enjoining defendant from claiming its product "allows seven times more air and sweat vapor to pass through the rainsuit than suits produced from GORE-TEX fabric").

Euro-Pro's false advertising claims deceive and confuse the consuming public, and this deception will only continue absent the issuance of an injunction. An injunction would therefore best serve the public by forcing Euro-Pro to cease its false advertising and ensure that each consumer makes his or her purchasing decisions based on true and accurate information. If Euro-Pro is permitted to continue its unlawful conduct, additional consumers will be misled and deceived with respect to the quality of the goods which they are purchasing. Thus, this final factor weighs heavily in favor of the issuance of an injunction.

### III. CONCLUSION

Because SEB has been substantially and irreparably harmed as a result of Euro-Pro's literally false advertising and unlawful conduct, and SEB will continue to be substantially and irreparably harmed in the loss of its customer and brand goodwill unless and until Euro-Pro is preliminarily and then permanently enjoined from engaging in its willful, deliberate and/or bad faith conduct, SEB respectfully requests that its motion be granted.

Dated: January 30, 2014	BUCHANAN INGERSOLL & ROONEY PC

*/s/ Gretchen L. Jankowski*
Gretchen L. Jankowski
Pa. I.D. No. 74540
Lynn J. Alstadt
Pa. I.D. No. 23487
Mackenzie A. Baird
Pa. I.D. No. 205687

One Oxford Center
301 Grant Street, 20th Floor
Pittsburgh, PA 15219-1410
412 562 8800 (t)
412 562 1041 (f)
gretchen.jankowski@bipc.com
lynn.alstadt@bipc.com
mackenzie.baird@bipc.com

*Counsel for Plaintiff,*
*Groupe SEB USA, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 30, 2014, a true and correct copy of the foregoing document was served via hand delivery to the following

Euro-Pro Operating LLC
c/o CT Corporation System
116 Pine Street
Suite 320
Harrisburg, PA 17101

*Gretchen L. Jankowski*