IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GROUPE SEB USA, INC, )
)
    Plaintiff, )
)
    v. ) Civil Action No. 14-137
) United States Magistrate Judge
EURO-PRO OPERATING LLC, ) Cynthia Reed Eddy[1]
)
    Defendant. )

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Motion to Dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 18). For the reasons discussed below, Defendant's Motion to Dismiss will be denied.

**Procedural Background**

On January 29, 2014, Plaintiff initiated this action for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and common law unfair competition under Pennsylvania law. (ECF No. 1). Defendant filed a motion to dismiss on February 20, 2014, asserting that Plaintiff has failed to "allege sufficiently – according to the requirements of either Rule 8(a) or the heightened pleading standard applicable in this Circuit for false advertising claims – facts to plausibly support the falsity of the "steam power" claims at issue." (ECF No. 20 at 1). Plaintiff filed its response brief on March 3, 2014. (ECF No. 25). This matter has been fully briefed.[2]

---

[1] By consent of the parties, (ECF Nos. 14, 16), pursuant to 28 U.S.C. § 636(c), the undersigned has full "authority over dispositive motions…and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003); *In re Search of Scranton Hous. Auth.*, 487 F.Supp.2d 530, 535 (M.D.Pa. 2007).
[2] On January 30, 2014, Plaintiff filed a Motion for Preliminary Injunction with the Court. (ECF No. 3). As a result, both parties have filed several documents with the Court in connection with said motion.

**Factual Background**

Both Plaintiff and Defendant sell household steam irons in the United States. Plaintiff's steam irons are sold under the brand-name Rowenta, which Plaintiff asserts "are the number one selling steam irons in the United States (measured by dollar value of sales), known especially for their superior steam output." Complaint (ECF No. 1), at ¶ 2. Defendant's steam irons are sold under the brand-name Shark. *Id.* at ¶ 3. Plaintiff avers that packaging on the Shark Ultimate Professional Iron, Model No. GI505-55 ("Shark 505"), contains literally false statements about the Rowenta DW9080 iron. *Id.* at ¶¶ 21-23. Plaintiff further avers that the packaging on the Shark Professional Iron, Model No. GI405-55 ("Shark 405"), contains literally false statements about the Rowenta DW5080 iron.

Specifically, both the Shark 405 and the Shark 505 contain the following statements on the front of the packaging: (1) "#1 Most Powerful Steam*" in the upper-right corner and (2) "More Powerful Steam vs. Rowena®† at half the price" in the lower-right corner. *Id.* at ¶¶ 22, 24. There are two disclaimers on the bottom of the Shark 405 and Shark 505 packaging; one disclaimer per statement. Regarding the "#1 Most Powerful Steam*" statement, the Shark 405 and Shark 505 have a disclaimer stating, "offers more grams per minute (extended steam burst mode before water spots appear) when compared to leading competition in the same price range, at time of printing." *Id.* Regarding the "More Powerful Steam vs. Rowena®† at half the price" statement, the Shark 405 and Shark 505 each contain a disclaimer making comparisons to a specific Rowenta model. The Shark 405's disclaimer states "††based on independent comparative steam burst testing to Rowenta DW5080 (grams/shot)." *Id.* at ¶ 24. The Shark 505's disclaimer states "†based on independent comparative steam burst testing to Rowenta

---

However, for this opinion, the Court has only considered the four corners of the complaint as well as Defendant's motion to dismiss and memorandum of law in support thereof and Plaintiff's response brief.

DW9080 (grams/shot)." *Id.* at ¶ 22. Plaintiff's Complaint provides pictures of the statements and disclaimers contained on the packing of the Shark 405 and Shark 505. *Id.* at ¶¶ 22, 24. The Complaint also provides a photograph of a hang tag on an in-store display of a Shark 405 with the statement and disclaimer that it has more powerful steam than the Rowenta DW5080 at half the price. *Id.* at ¶ 26.

Plaintiff avers that in December 2013, it "received a report from an outside laboratory that [Plaintiff] retained to conduct tests on the Shark [505], Shark [405], Rowenta DW9080 and Rowenta DW5080 pursuant to protocols established by the International Electrotechnical Commission ("IEC") as well as Euro-Pro's own instruction for use."[3] *Id.* at ¶ 27. "The independent tests measure (1) the variable steam rate (in grams per minute) according to IEC60311 protocol, (2) the mass of shot of steam of each iron (in grams per shot) according to IEC60311 protocol, and (3) the mass of shot of steam of each iron (in grams per shot) according to the instructions for use provided with the [Shark 505]." *Id.* at ¶ 29. "For each test, the Rowenta DW9080 performed better than the [Shark 505] and the Rowenta DW5080 performed better than the [Shark 405]." *Id.* at ¶ 30. As a result, Plaintiff concludes that "the Rowenta steam irons have greater steam power than the Euro-Pro Shark steam irons, thereby establishing Euro-Pro's advertising about the comparative performance of the Shark steam irons [is] literally false." *Id.* at ¶ 31.

**Standard of Review**

In light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint may be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough

---

[3] "The IEC is a non-profit, non-governmental international standards organization that prepares and publishes International Standards for all electrical, electronic and related technologies, collectively known as 'electrotchnology.' The IEC is the world's leading international organization in its field, and its standards are adopted as national standards by its members." *Id.* at ¶ 28.

facts to state a claim to relief that is plausible on its face." *Phillips v. Co. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). While *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) allowed dismissal of a claim only if "no set of facts" could support it, under *Twombly*, and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a claim for relief under Rule 12(b)(6) now "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

In *Iqbal*, the Supreme Court held that a claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). The plausibility standard in *Iqbal* "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. While well-pleaded factual content is accepted as true for purposes of whether the complaint states a plausible claim for relief, legal conclusions couched as factual allegations or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to an assumption of truth. *Iqbal*, 566 U.S. at 678. "Where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 566 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). In order to satisfy the requirement of Fed.R.Civ.P. 8(a)(2) that a plaintiff include a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must aver sufficient factual allegations which "nudge" its claims "across the line from conceivable to plausible." *Id*.

As the Court of Appeals for the Third Circuit explained in *Fowler*, 578 F.3d at 210–11:

> . . . The Supreme Court's opinion in *Iqbal* extends the reach of *Twombly*, instructing that all civil complaints must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949.

> Therefore, after *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id*. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, ... [the] "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

*See also Santiago v. Warminster Twp*., 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 674, 679); *Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (3d Cir. 2011), *cert. denied*, ––– U.S., –––– 132 S.Ct. 1861 (2012); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

In considering a Rule 12(b)(6) motion, a court accepts all of the plaintiff's allegations as true and construes all inferences in the light most favorable to the non-moving party. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008) (citing *Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006)). However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n. 8 (3d Cir. 1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).

Therefore, a plaintiff must put forth sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315 (3d Cir. 2008) (citing *Phillips*, 515 F.3d at 224). This standard does not impose a heightened burden on the claimant above that already required by Rule 8, but instead

calls for fair notice of the factual basis of a claim while raising a "reasonable expectation that discovery will reveal evidence of the necessary element." *Weaver v. UPMC*, 2008 WL 2942139, *3 (W.D.Pa. 2008) (citing *Phillips*, 515 F.3d at 234; and *Twombly*, 550 U.S. at 555).

**Discussion**

Defendant argues that Lanham Act false advertising claims have a heightened pleading standard, and Plaintiff has failed to adequately state a cause of action under said standard. Defendant's Brief (ECF No. 19), at 1, 3. In *Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F. Supp. 1549 (E.D. Pa. 1985), the court imposed a heightened pleading standard for false advertising claims brought under the Lanham Act, striking a balance between the pleading requirements in Rule 8 and Rule 9(b). In that case, the court stated that the complaint

> need not satisfy all of the pleading requirements which have been imposed under Rule 9. But the policies which underlie Rule 9's requirement that the nature of an alleged misrepresentation be pleaded with specificity are equally applicable to the type of misrepresentation claims presented in plaintiffs' Lanham Act claim. In litigation in which one party is charged with making false statements, it is important that the party charged be provided with sufficiently detailed allegations regarding the nature of the alleged falsehoods to allow him to make a proper defense.

*Id.* at 1556.

However, the Third Circuit has not yet adopted this heightened pleading standard, and district courts disagree over the applicable standard. *See Evco Tech. & Dev. Co., LLC v. Buck Knives, Inc.*, 2006 WL 2773421, *4 (E.D. Pa. 2006). Moreover, as other district courts in this circuit have observed, the standard set forth in *Max Daetwyler* was decided prior to the Supreme Court's decisions in *Twombly* and *Iqbal* as well as the Third Circuit's decision in *Fowler*. *See UHS of Delaware, Inc.v. United Health Serv., Inc.*, 2013 WL 1308303, *3 (M.D. Pa. 2013);

6

*Mycone Dental Supply Co., Inc., v. Creative Nail Design, Inc.*, 2012 WL 3599368, *5 (D.N.J. 2012).

Assuming *arguendo* that an intermediate pleading standard is applicable in Lanham Act false advertising claims, Plaintiff has clearly satisfied such a standard. The complaint provides quotations of the alleged literally false statements and their disclaimers. Additionally, the complaint provides photographs of the packaging of the Shark 405 and Shark 505. The complaint also identified industry standards regarding testing protocols, described the tests which measured both the industry protocols and the statements appearing on the Shark packaging, and concluded that the Rowenta outperformed the Shark with respect to every test. Consequently, the complaint provides Defendant with "sufficiently detailed allegations regarding the nature of the alleged falsehoods to allow [it] to make a proper defense." *Max Daetwyler*, 608 F. Supp. at 1556.

Defendant argues that Plaintiff has failed to establish literal falsity with respect to both statements made on the packaging and hangtags of the Shark 405 and Shark 505. Defendant's Brief (ECF No. 19), at 4. In order to state a cause of action for false advertising under the Lanham Act, the plaintiff must prove the following:

> 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011). The second element, actual deception or tendency to deceive, is presumed if a plaintiff proves the advertisement is (1) unambiguous and (2) literally false. *Id*. (citing *Novartis Consumer Health,*

7

*Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). "If the message conveyed by an advertisement is literally true or ambiguous, however, the plaintiff must prove actual deception or a tendency to deceive, and it may do so with a properly conducted consumer survey."[4] *Id.*

Regarding the statement that specifically compares Shark steam irons to Rowenta steam irons, Defendant asserts that Plaintiff "does not allege any facts that relate to how or in what way the 'steam power' claims are false." Defendant's Brief (ECF No. 19), at 1. Defendant further argues that "the 'report' referenced superficially in the Complaint purports to measure steam *mass*, which is insufficient to support a legal claim to challenge Euro-Pro's steam *power* claims." *Id.* at 4. Plaintiff, citing to the disclaimers appearing on the bottom of the Shark 405 and Shark 505 packaging and in-store displays, counters that Defendant's "argument simply ignores the fact [that] Euro-Pro has itself defined 'steam power' as measured in grams/shot and grams/minute on the very products at issue in this case." Plaintiff's Brief (ECF No. 25), at 6.

The tests described and referenced in the complaint allegedly measured the variable steam rate (in grams per minute) and the mass of shot of steam of each iron (in grams per shot) in accordance with IEC60311. Complaint (ECF No. 1), at ¶29. The complaint also avers that the tests measured "the mass of shot of steam of each iron (in grams per shot) according to the instructions for use provided with the Shark [505]." *Id.* Therefore, Defendant's argument is without merit, as the complaint more than sufficiently puts Defendant on notice of the "nature of the alleged falsehoods to allow [it] to make a proper defense."

Regarding the statement that Shark steam irons have the "#1 Most Powerful Steam," Defendant contends that the complaint "overlooks that the advertising statement is made in

---

[4] "A Pennsylvania cause for unfair competition is identical to the Lanham Act, without the federal requirement of interstate commerce." *R.J. Ants, Inc. v. Marinelli Enters., LLC*, 771 F. Supp. 2d 475, 489 (E.D. Pa. 2011).

comparison to the 'leading competition in the price range,' and not in comparison to Rowenta at all." Defendant's Brief (ECF No. 19), at 5. However, this is a mischaracterization of Plaintiff's claim. The complaint alleges that the "#1 Most Powerful Steam" statement is false because it appears "in juxtaposition" to the other statement comparing Shark to Rowenta. Complaint (ECF No. 1), at ¶¶ 22, 24. Moreover, the complaint quotes the language of the disclaimer which states, "when compared to leading competition in the same price range," so Defendant's argument that the complaint "overlooks" this language is invalid. *Id*. Accordingly, Plaintiff has sufficiently pleaded literal falsity here.

Lastly, Defendant asserts that "the Complaint contains an independent flaw: it alleges advertising statements that are not made, and which therefore cannot support [Plaintiff's] literal falsity claim." Defendant's Brief (ECF No. 19), at 6. Defendant argues the complaint "alleges that Euro-Pro 'represents' other claims to consumers, namely that the Euro-Pro products are 'superior' and 'offer the same high-quality performance' as SEB's products," but "does not identify advertising that contains these statements and therefore these allegations do not support SEB's purported literal falsehood claim." *Id*. (internal citations omitted). Plaintiff counters that "Euro-Pro's literally false claim that the Shark irons offer 'MORE POWERFUL STEAM vs. Rowenta® at half the price' is obviously a claim of superiority that deceives consumers into the false belief that the much lower-priced Shark steam irons offer the same high-quality performance of the Rowenta irons." Plaintiff's Brief (ECF No. 25), at 6. The Court agrees with Plaintiff.

**Conclusion**

Based on the foregoing, Defendant's Motion to Dismiss (ECF No. 18) is **DENIED**. Because the parties are currently litigating Plaintiff's Motion for Preliminary Injunction, the

Court will stay Defendant's obligation to file an Answer until twenty-one (21) days after the parties' Supplemental Proposed Findings of Fact and Conclusions of Law are due.

    IT IS SO ORDERED.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: All counsel of record via CM-ECF