# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GROUPE SEB USA, INC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-137 |
| | ) | United States Magistrate Judge |
| EURO-PRO OPERATING LLC, | ) | Cynthia Reed Eddy |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

Pending before the Court is Defendant Euro-Pro Operating LLC's ("Defendant" or "Euro Pro") Emergency Motion For Stay of Preliminary Injunction Order Pending Appeal pursuant to Federal Rule of Civil Procedure 62(c). (ECF No. 57). For the reasons discussed below, Defendant's motion is denied.

**I.   Background**

On May 15, 2014, this Court entered a Memorandum Opinion (ECF No. 53) and Order (ECF No. 54) granting Plaintiff Groupe SEB USA, Inc.'s ("Plaintiff" or "SEB") Motion for Preliminary Injunction. (ECF No. 3). Said Memorandum Opinion and Order are incorporated herein. To summarize, the Court found that Euro-Pro made false advertisements about Plaintiff's products in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and engaged in common law unfair competition under Pennsylvania law. Specifically, the Court found that Defendant's Shark 405 made literally false statements regarding Plaintiff's Rowenta DW5080, and Defendant's Shark 505 made literally false statements regarding Plaintiff's Rowenta DW9080. As a result, the Court entered an Order enjoining Euro-Pro from further engaging in false advertising, and required that Euro-Pro place stickers over or otherwise cover

1

the literally false statements on the Shark 405 and Shark 505. The Court further Ordered Euro-Pro to remove any hang tags on the Shark 405 or Shark 505 that contain the literally false statements.

That same day, Euro-Pro filed a Notice of Appeal. (ECF No. 56). On May 19, 2014, Euro-Pro filed the pending motion. (ECF No. 57). The matter has been fully briefed and is ripe for disposition. (ECF Nos. 58, 60).

## II. Legal Standard

Federal Rule of Civil Procedure 62(c) provides that, when "an appeal is taken from an interlocutory or final judgment . . . denying an injunction," a court, in its discretion, "may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." Federal Rule of Appellate Procedure 8(a)(1)(C) provides that the party seeking an "order suspending, modifying, restoring, or granting an injunction while an appeal is pending" must "ordinarily move first in the district court" for such relief. Both Rules are generally governed by the same factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
>
> (2) whether the applicant will be irreparably injured absent a stay;
>
> (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
>
> (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

"Although these are the same factors the Court considers in deciding whether to grant a preliminary injunction, an applicant seeking a stay has, relatively speaking, more difficulty

establishing the first factor, likelihood of success on the merits, due to the difference in procedural posture." *Dehainaut v. California Univ. of Pennsylvania*, 2011 WL 3810132, *2 (W.D. Pa. 2011). Consequently, the moving party "must ordinarily demonstrate . . . that there is a likelihood of reversal." *Id.* (quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153-154 (6th Cir. 1991). Moreover, "even if an [applicant] demonstrates irreparable harm that decidedly outweighs any potential harm to the [adverse party] if a stay is granted, he is still required to show, at a minimum, serious questions going to the merits." *Id.* Therefore, "the party seeking such relief is, not surprisingly, deemed to bear a very heavy burden of persuasion." *F.T.C. v. Equitable Resources, Inc.*, 2007 WL 1500046, *1 (W.D. Pa. 2007).

## III.    Discussion

### A.    Likelihood of Success on the Merits of the Appeal

Euro-Pro first argues that "the mandatory relief embodied in the Court's Order does not accurately reflect the Court's findings of fact as expressed in the Memorandum Opinion." Defendant's Brief (ECF No. 58), at 3. Euro-Pro contends that "the mandatory preliminary injunction imposed by the Court's Order exceeds the scope of the reasoning in the Memorandum, forcing Euro-Pro to cover its claims, even if those claims appear without reference to the disclaimers." *Id.* SEB counters that "Euro-Pro did not offer evidence of such claims at the hearing and does not identify them now." Plaintiff's Brief (ECF No. 60), at 3. SEB also asserts that "[t]his argument falls far short of demonstrating 'serious questions going to the merits.'" *Id*. The Court agrees with SEB. The packaging of the Shark 505 was introduced as Plaintiff's Exhibit 1 and the packaging of the Shark 405 was introduced as Plaintiff's Exhibit 2. Both packages contain the literally false statements with reference to the disclaimers.

Additionally, the literally false statements on the hangtags were made with reference to the disclaimers. Euro-Pro does not identify any statements that appear without reference to the disclaimers on the Shark 505 or Shark 405 steam irons, and it offered no evidence or argument at the hearing of the same. Therefore, this argument is without merit.

Euro-Pro next asserts that "the evidence on the record does not support a finding of irreparable harm to SEB" because "SEB did not establish a sufficient legal or factual link between this supposed harm and the actual advertising at issue in this case." Defendant's Brief (ECF No. 58), at 3-4. Euro-Pro does not challenge the caselaw relied upon by the Court, but rather challenges whether there was sufficient evidence to warrant a finding of a "clear showing" of irreparable harm. The Court found that Euro-Pro's literally false statements on the packages of the Shark 505 and Shark 405 steam irons are likely to have a negative effect on SEB's relationships with its customers and retailers. Memorandum Opinion (ECF No. 53), at 18. In making this finding, the Court credited the testimony of SEB's marketing director. Although Euro-Pro claims that such evidence is insufficient to find irreparable harm, Euro-Pro relies on essentially the same type of evidence via its director of sales and trade marketing in arguing that it has proved it will suffer irreparable harm. *Id.* at 19. Furthermore, Euro-Pro concedes that calculating a loss of reputation and goodwill "would be near impossible to calculate." *Id.* The Court also found persuasive the fact that the competing steam irons are regularly sold next to each other on retail shelves and that Euro-Pro specifically chose to identify SEB's products by name. *Id.* at 18. As a result, the Court finds that its conclusion that SEB established a clear showing of likelihood of irreparable injury is supported by the evidence of record.

Euro-Pro next asserts that "this case raises a novel legal issue of Lanham Act jurisprudence, which weights in favor of granting a stay pending appellate review." Defendant's

Brief (ECF No. 58), at 4.  Specifically, Euro-Pro points to the consumer survey evidence from its marketing expert, claiming that "[t]he role of consumer survey evidence in determining ambiguity of advertising is an issue of first impression in this Circuit." *Id.* at 5.  Euro-Pro asserts that the Court should grant its motion because "the Court [did] not directly address the consumer survey at all when discussing the ambiguity of the claims – ultimately deciding against the weight of the only consumer-relevant evidence in the record." *Id.*  However, the Court found that the claims are unambiguous based on Euro-Pro's own definition on its packaging.  SEB correctly points out that because the Court determined that the statements at issue are literally false, it was "not required to evaluate the advertisements' impact on the buying public, and to the extent it discounted or disregarded Euro-Pro's consumer survey evidence, that decision was proper."  Plaintiff's Brief (ECF No. 60), at 4 (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002); *Omose, Inv. V. Viance, LLC,* 612 F.3d 1298, 1319 (11th Cir. 2010)).  While the Court did not specifically address the consumer surveys, it broadly discounted them by finding that the advertisements are literally false.  *See* Highmark*, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d at 160, 171 (3d Cir. 2001) ("If an advertisement is literally false, the plaintiff does not have to prove actual consumer deception").

      Euro-Pro next argues that "the text of the Memorandum Opinion demonstrates that SEB received this preliminary injunction by virtue of a diminished burden of proof."  Defendant's Brief (ECF No. 58), at 5.  Defendant contends that while a plaintiff bears the burden to introduce evidence which clearly shows that it is likely to succeed on the merits, *see Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008), "the Memorandum Opinion dedicates the majority of its section on falsity to a critical analysis of Euro-Pro's evidence, with little to no

mention of plaintiff SEB's evidence." Defendant's Brief (ECF No. 58), at 5-6. This is a mischaracterization of the Court's opinion. In finding that the advertisements are literally false, the Court evaluated the testing evidence provided by SEB in detail. Memorandum Opinion (ECF No. 53), at 6-7 nn.29-32. Plaintiff established literal falsity through the SLG Testing Report, and this finding was supported by the testimony of Dr. Kemal, Euro-Pro's expert, regarding his own independent testing and the fact that the advertisements were unsubstantiated at the time they were made. *Id.* at 6-7, 9, 12-14. Plaintiff carried its burden in establishing literal falsity, and therefore, this argument is without merit.

Lastly, Euro-Pro asserts that it is likely to succeed on the merits on appeal because "the Court did not credit the scientific test and testimony of Euro-Pro's scientific expert of [sic] Dr. Kemal, who provided that the advertising claims were true, and that the Euro-Pro's steam irons, in fact, have 'more powerful steam' than Rowenta's steam irons." Defendant's Brief (ECF No. 58), at 6. SEB counters that "the Court did not need expert testimony on this issue; Euro-Pro defined power (in grams per shot and grams per minute) on the subject advertisements." Plaintiff's Brief (ECF No. 60), at 3. The Court agrees with SEB.

In an attempt to manufacture an ambiguity, Euro-Pro sought testimony from Dr. Kemal, which was largely irrelevant. Dr. Kemal testified that the scientific definition of "power" is different than the definition of power on the packaging of the Shark 405 and Shark 505, which states "based on independent comparative steam burst testing" measured in "(grams/shot)." The fact remains that Euro-Pro chose the definition of power on its product. Therefore, Dr. Kemal's scientific testing is irrelevant to the extent that it is contrary to the testing set forth on the packaging.

6

Notably, however, the Court did consider the portion of Dr. Kemal's testimony regarding the testing defined on the packaging. The Court found that Dr. Kemal's comparative steam burst testing in grams per shot ultimately supported a finding of literal falsity because he found the competing steam irons were "comparable," and could not "say for sure that one was always operating better than the other." Memorandum Opinion (ECF No. 53), at 9, 13. Therefore, the Court gave Dr. Kemal's opinion appropriate consideration.

**B.     Irreparable Injury if the Stay is Denied; Injury to Other Interested Parties**

Euro-Pro asserts that the "[e]vidence in the record demonstrates that if the Court does not stay its Order, Euro-Pro faces substantial and irreparable injury." Defendant's Brief (ECF No. 58), at 7. In support, Defendant reasserts arguments that the Court already considered and rejected. *Id.*; *see also* Memorandum Opinion (ECF No. 53), at 19, 21-24. As noted in the Memorandum Opinion, the Court attempted to minimize Euro-Pro's injury by requiring stickering and removal of hang tags, as opposed to repackaging of the products, which Euro-Pro's director of sales and trade marketing testified would be much faster. Memorandum Opinion (ECF No. 58), at 21-22.

Euro-Pro also contends that "[t]he potential harm to SEB posed by the instant Motion is minimal, considering the temporary nature of the requested delay." Defendant's Brief (ECF No. 58), at 8. Given that the Court found SEB is likely to suffer irreparable injury absent an injunction, this argument is unpersuasive. Euro-Pro further argues that "SEB's dilatory conduct also demonstrates a comparative lack of harm." *Id.* at 9. The Court already considered this argument and explicitly rejected it. Memorandum Opinion (ECF No. 53), at 20-21. Euro-Pro also asserts that "SEB will not suffer any monetary damages during the pendency of the appeal." Defendant's Brief (ECF No. 58), at 9. SEB is not required to prove it suffered monetary

7

damages.  *See W.L. Gore & Assoc., Inc. v. Totes, Inc.,* 788 F.Supp 800, 810 ("[i]rreparable injury does not require diversion of actual sales"); *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187, 195 (3d Cir. 1990) (likelihood of loss of control of reputation, loss of trade, and loss of goodwill are grounds for finding irreparable injury).  The Court found that absent an injunction, SEB is likely to suffer irreparable harm in the form of loss of control of reputation, loss of trade, and loss of goodwill, so this argument is baseless.  *See* Memorandum Opinion (ECF No. 53), at 18-21.

Moreover, the Court notes that it found that "any loss that Defendant may suffer as a result of its literally false statements would be self-imposed."  Memorandum Opinion (ECF No. 53), at 22; *see also Novartis,* 290 F.3d at 596 ("[t]he injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself").  Additionally, the Court found that "any harm likely to be suffered by Defendant is outweighed by the harm that Plaintiff is likely to suffer."  Memorandum Opinion (ECF No. 53), at 23.  Therefore, Euro-Pro's arguments regarding its likelihood of irreparable injury and the comparative injury to SEB are unpersuasive.

**C.     Public Interest**

Euro-Pro asserts that "[t]he public interest supports a stay of the preliminary injunctive relief until it has been examined on appeal."  Defendant's Brief (ECF No. 58), at 9.  Euro-Pro contends that "relief outlined in the its current form by the Court's Order is so broadly drawn that it effectively precludes Euro-Pro from engaging in legitimate commercial speech."  *Id.* at 10. SEB counters that "a stay would permit Euro-Pro's literally false advertisements to remain in stores and on shelves while its appeal to the Third Circuit is pending – a period which will undoubtedly be measured in months – therefore is not in the public interest."  Plaintiff's Brief

(ECF No. 60), at 6.  The Court agrees with SEB.  As indicated above, the Court rejects Euro-Pro's argument that the Order is overbroad.  Thus, the Court finds that Euro-Pro's right engage in legitimate commercial speech has not been impeded.  Rather, the Court has precluded Euro-Pro from engaging in *literally false* commercial speech, which is not in the public interest.

**IV.    Conclusion**

Based on the foregoing, the Court finds that Euro-Pro has not met its heavy burden in this case.  As a result, Euro-Pro's motion is denied.

**AND NOW**, this 3rd day of June, 2014, upon consideration of this Court's Memorandum Opinion (ECF No. 53) and Order (ECF No. 54) from May 15, 2014, as well as the parties' arguments in their briefs (ECF Nos. 58, 60), **IT IS HEREBY ORDERED** that Euro-Pro's Emergency Motion for Stay of Preliminary Injunction Order Pending Appeal (ECF No. 57) is **DENIED**.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF